[No. S156598. Feb. 1, 2010.]

BROWN, WINFIELD & CANZONERI, INC., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES, Respondent;
GREAT AMERICAN INSURANCE COMPANY, Real Party in Interest.

1234

## COUNSEL

Bingham McCutchen, Bruce A. Friedman, Kenneth S. Meyers, Gina M. Simas; Shernoff Bidart Darras & Echeverria, Michael J. Bidart, Ricardo Echeverria; The Ehrlich Law Firm and Jeffrey Isaac Ehrlich for Petitioner.

No appearance for Respondent.

Cochran, Davis & Associates, Joan E. Cochran; Thompson & Alessio, Kris P. Thompson and Jeffrey K. Miyamoto for Real Party in Interest.

Jay-Allen Eisen; Dennis A. Fischer; Joseph R. Grodin; Steven L. Mayer; Robin Meadow; Robert A. Olson; Jonathan B. Steiner; Douglas R. Young; Eisenberg and Hancock and Jon B. Eisenberg for California Academy of Appellate Lawyers as Amicus Curiae on behalf of Real Party in Interest.

## OPINION

GEORGE, C. J.—In *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171 [203 Cal.Rptr. 626, 681 P.2d 893] (*Palma*), we outlined the rare circumstances in which an appellate court may grant accelerated writ relief in the form of a peremptory writ in the first instance, in lieu of following the

usual procedures associated with the issuance of an alternative writ or an order to show cause. We held that, at a minimum, a peremptory writ of mandate or prohibition may not issue in the first instance without notice that the issuance of such a writ in the first instance is being sought or considered. (*Palma, supra,* 36 Cal.3d at p. 180.) In addition, we emphasized that "an appellate court, absent exceptional circumstances, should not issue a peremptory writ in the first instance without having received, or solicited, opposition from the party or parties adversely affected." (*Ibid.*) Pursuant to *Palma,* our Courts of Appeal—prior to ordering issuance of a peremptory writ in the first instance—provide notice that such a writ may issue, and invite informal opposition, in orders routinely called "*Palma* notices."

At issue in the present case is the propriety of so-called "suggestive" *Palma* notices. A suggestive *Palma* notice—sometimes denominated a "coercive" or "speaking" *Palma* notice—typically contains the following: notice that the Court of Appeal intends to issue a peremptory writ in the first instance granting the relief requested by the petitioner; a discussion of the merits of the writ petition, with a suggestion that the trial court erred in the manner claimed by the petitioner; a specific grant to the trial court of "power and jurisdiction" to change the disputed interim order and enter in its place a new order consistent with the views of the appellate court, in which event the writ petition will be vacated as moot; and a solicitation of opposition to the issuance of a peremptory writ in the first instance, should the trial court elect not to follow the appellate court's recommendation.

■ As discussed below, we conclude that it is not improper for an appellate court to issue a suggestive *Palma* notice, and that it may do so without first having received or solicited opposition from the real party in interest. A suggestive *Palma* notice is *not* the equivalent of a peremptory writ, which requires both notice and an opportunity for opposition before the writ may issue in the first instance. Although a suggestive *Palma* notice may be styled as an order, such a notice in no way commands or otherwise obligates the lower court to follow the course of action suggested by the appellate court. Rather, a suggestive *Palma* notice is analogous to a tentative ruling, in that it sets forth the appellate court's preliminary conclusions with respect to the merits of the writ petition—conclusions that, similar to those reflected in a tentative ruling, are not binding upon either the trial court or the appellate court.

It appears, however, that upon receiving a suggestive *Palma* notice from an appellate court, a trial court often will quickly vacate, modify, or otherwise reconsider the challenged ruling in order to conform its action to the views expressed in the notice—all before the party adversely affected has filed (or

has had an opportunity to file) any opposing papers in response to the *Palma* notice. When the trial court takes such action, the Court of Appeal will dismiss the writ petition.

We conclude that if a trial court decides on its own motion to revisit its interim ruling in response to a suggestive *Palma* notice—an action within its inherent authority (see *Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1107–1109 [29 Cal.Rptr.3d 249, 112 P.3d 636] (*Le Francois*))—that court must inform the parties of its intent to do so, and provide them with an opportunity to be heard. (See *id.* at pp. 1108–1109.) Requiring adherence to this procedure is consistent with our relevant case law, and reasonably balances the interests of conservation of scarce judicial resources with the parties' right to notice and an opportunity to be heard.

## I.

The writ proceeding in the case now before us arises from an action for declaratory relief brought by Great American Insurance Company (GAIC) against its insured, Brown, Winfield & Canzoneri, Inc. (Brown), to resolve an insurance coverage dispute. Initially, the trial court stayed the declaratory relief action, pending resolution of litigation involving claims for which Brown sought coverage, but in July 2007, while the underlying litigation still was pending, that court lifted the stay in the declaratory relief action and set a trial date.

On August 17, 2007, in response to the foregoing action taken by the trial court, Brown filed with the Court of Appeal, Second Appellate District, a "Petition for Writ of Mandate, Prohibition, or Other Appropriate Relief," requesting an immediate stay of all declaratory relief proceedings, and further requesting an order requiring the trial court to vacate the trial date and stay all proceedings until after conclusion of the underlying litigation. On August 28, 2007, the Court of Appeal issued an "order" comprising the suggestive *Palma* notice at issue in the present proceedings.

At the outset, the three-page suggestive *Palma* notice stated that "it appears the trial court erred in lifting the stay [of the declaratory relief action] prior to the determination of the underlying action." The notice then discussed both the factual and the legal merits of the writ petition, concluding that Brown's "entitlement to relief is so obvious that no purpose could reasonably be served by plenary consideration of the issue . . . . [Citations.]" Based upon this conclusion, and citing *Palma, supra,* 36 Cal.3d 171, the challenged notice advised the trial court and the parties of the Court of Appeal's "present intention to issue a peremptory writ of mandate in the first instance" directing the trial court to vacate its July 3, 2007, order and enter an order reinstating

the stay pending resolution of the underlying case. The notice then conferred upon the respondent trial court "the power and jurisdiction to change and correct its erroneous order, and to enter in its place a new order in accord with the views expressed herein." The notice stated that in the event the trial court were to take the latter action, the writ petition would be dismissed. Finally, the notice provided a schedule for briefing to be followed if the trial court "fail[ed] to comply with the directive set forth herein."

On August 29, 2007, one day after the Court of Appeal filed its *Palma* notice, the trial court issued an order that acknowledged the Court of Appeal's suggestive *Palma* notice, vacated the trial court's July 3, 2007, order, and reinstated the stay of the declaratory relief action pending resolution of the underlying case. Upon receiving a copy of the trial court's order reinstating the stay, the Court of Appeal dismissed the writ petition.

We thereafter granted GAIC's petition for review of the appellate court's August 28 order, limiting our review to the following issues: (1) whether an appellate court properly may issue a suggestive *Palma* notice and, if so, (2) whether, absent exceptional circumstances, such a notice may be issued without the appellate court's having received or solicited opposition from the real party in interest.[1]

## II.

The California Constitution grants the courts original jurisdiction in proceedings seeking extraordinary relief in the form of writs of mandamus, prohibition, and certiorari. (Cal. Const., art. VI, § 10.) The Code of Civil Procedure and the California Rules of Court[2] set forth the procedures governing a court's exercise of its power and discretion to issue a writ. (See generally § 1084 et seq.; rule 8.485 et seq.)

---

[1] As noted, Brown's writ petition was dismissed by the Court of Appeal as moot when the trial court acted in accordance with the suggestive *Palma* notice here at issue. The parties' briefs subsequently informed the court that the issue giving rise to the writ proceedings—whether GAIC's declaratory relief action should have been stayed during the pendency of the underlying litigation concerning claims for which Brown sought coverage—became moot when that litigation settled. The present case nonetheless presents "important question[s] affecting the public interest" that are " ' " 'capable of repetition, yet evading review.' " ' " [Citation.] Accordingly, our resolution of the case at this juncture is appropriate." (*NBC Subsidiary (KNBC-TV), Inc. v. Superior Court* (1999) 20 Cal.4th 1178, 1190, fn. 6 [86 Cal.Rptr.2d 778, 980 P.2d 337]; see also *Peterson v. City of San Diego* (1983) 34 Cal.3d 225, 227 [193 Cal.Rptr. 533, 666 P.2d 975] [appellate courts have discretion to consider a case that is technically moot, when the issues are of continuing public importance].)

[2] Unless otherwise noted, all further statutory references are to the Code of Civil Procedure, and all further references to rules are to the California Rules of Court.

■ When a petition is filed seeking a writ commanding the respondent superior court to act in a certain manner, such as by vacating or revising an interim order, an appellate court may (1) summarily deny the petition,[3] (2) issue an alternative writ or an order to show cause pursuant to section 1087, or (3) issue a peremptory writ in the first instance, pursuant to section 1088 and the procedure set forth in *Palma, supra,* 36 Cal.3d 171. (See *Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1239–1240 [82 Cal.Rptr.2d 85, 970 P.2d 872] (*Lewis*).) The scenario that gives rise to the issues in the present case involves the issuance of a peremptory writ of mandate in the first instance. This accelerated procedure dispenses with the issuance of an alternative writ, and with the requirement that the Court of Appeal afford an opportunity for formal briefing and oral argument before ordering that a peremptory writ issue. (See Cal. Civil Writ Practice (Cont.Ed.Bar 4th ed. 2009) § 22.18, p. 601 (Civil Writ Practice) [a *Palma* notice "informally describes the first step in the streamlined procedure for deciding the merits of a writ petition that avoids the more formal procedures triggered by the issuance of an alternative writ"].)

In *Palma, supra,* 36 Cal.3d 171, we considered the circumstances and procedures appropriate to an appellate court's issuance of a peremptory writ in the first instance. Based upon section 1088's "due notice" requirement,[4] which "was intended to place the respondent and real party in interest on notice, in the absence of an alternative writ, that a peremptory writ might issue" (*Palma, supra,* 36 Cal.3d at p. 179), we held that a peremptory writ of mandate or prohibition may not issue in the first instance unless, at a minimum, "the parties adversely affected by the writ have received notice . . . that the issuance of such a writ in the first instance is being sought or considered." (*Palma, supra,* 36 Cal.3d at p. 180.) We further concluded that, absent exceptional circumstances, an appellate court "should not issue a peremptory writ in the first instance without having received, or solicited, opposition from the party or parties adversely affected." (*Ibid.*) Finally, we cautioned that a peremptory writ in the first instance should not issue unless "it appears that the petition and opposing papers on file adequately address the issues raised by the petition, that no factual dispute exists, and that the additional briefing that would follow issuance of an alternative writ is unnecessary to disposition of the petition." (*Id.* at p. 178.)

---

[3] The most recent statistics available indicate that approximately 94 percent of the petitions seeking writ relief in the Courts of Appeal are denied summarily. (See Judicial Council of Cal., Court Statistics Rep. (2009) p. ix <http://www.courtinfo.ca.gov/reference/documents/csr2009.pdf> [as of Feb. 1, 2010].)

[4] Section 1088 provides, in relevant part, that "[w]hen the application to the court is made without notice to the adverse party, and the writ is allowed, the alternative must be first issued; but if the application is upon due notice and the writ is allowed, the peremptory may be issued in the first instance."

This court observed in *Palma* that these procedural safeguards—providing notice and requesting informal opposition prior to the issuance of a peremptory writ—serve a number of important purposes. For example, the notice requirement places the respondent and any real party in interest on notice, in the absence of an alternative writ, that a peremptory writ might issue. (*Palma, supra,* 36 Cal.3d at p. 179.) Additionally, "[b]y eliminating the necessity for full scale response where such a response is unnecessary, such a practice helps to reduce the cost of litigation to the parties; and by encouraging opposition when the court is about to act affirmatively on a petition, it helps to conserve judicial resources as well. In the case of a peremptory writ in the first instance, such a practice helps also to assure that the respondent, or real party, has had full opportunity to oppose what may turn out to be the final, and to his interests adverse, resolution of a legal issue." (*Id.* at p. 180.)

█ Subsequently, in *Ng v. Superior Court* (1992) 4 Cal.4th 29 [13 Cal.Rptr.2d 856, 840 P.2d 961] (*Ng*), we emphasized that the issuance of a peremptory writ in the first instance is a procedural "rarity," and we cautioned that this "exception" to the normal writ procedure "should not become routine." (*Id.* at p. 35.) Generally, the accelerated *Palma* procedure "should be adopted only when petitioner's entitlement to relief is so obvious that no purpose could reasonably be served by plenary consideration of the issue— for example, when such entitlement is conceded or when there has been clear error under well-settled principles of law and undisputed facts—or when there is an unusual urgency requiring acceleration of the normal process. If there is no compelling temporal urgency, and if the law and facts mandating the relief sought are not entirely clear, the normal writ procedure, including issuance of an alternative writ [citation,] should be followed." (*Ng, supra,* 4 Cal.4th at p. 35; see, e.g., *Alexander v. Superior Court* (1993) 5 Cal.4th 1218, 1223 [23 Cal.Rptr.2d 397, 859 P.2d 96] [the Court of Appeal erred in considering writ application under expedited procedures authorized in § 1088 instead of under alternative writ procedure of § 1087, because nothing in the record suggested " 'unusual urgency' " justifying expedited resolution].)

Of course, even in the limited circumstances in which issuance of a peremptory writ in the first instance is appropriate, such a writ may not issue unless the appellate court first satisfies the strictures outlined in *Palma, supra,* 36 Cal.3d at page 180. (Compare *Kernes v. Superior Court* (2000) 77 Cal.App.4th 525, 530 [91 Cal.Rptr.2d 765] [the appellate division of the superior court erred in ordering issuance of a peremptory writ in the first instance when the petition did not expressly notify the respondent that such relief was being sought, the court failed to request opposition from the respondent, and no unusual exigency justified that failure] with *Payless Drug Store v. Superior Court* (1993) 20 Cal.App.4th 277, 279 [24 Cal.Rptr.2d 506] [after giving notice that it was considering issuing a peremptory writ in first instance, then requesting and receiving informal replies from the real parties in

interest, appellate court ordered issuance of writ on grounds that exceptional circumstances existed and further proceedings would add nothing to its review, because petitioner's entitlement to relief was obvious].)

Finally, in *Lewis, supra*, 19 Cal.4th 1232, this court recognized that an appellate court may order issuance of a peremptory writ of mandate or prohibition in the first instance without affording the parties an opportunity for oral argument (*id.* at 1237), but we also reaffirmed the importance of the procedural safeguards outlined in *Palma*, noting that "the Court of Appeal generally should afford the respondent and/or real party in interest the opportunity to present written opposition . . . ." (*Lewis, supra*, 19 Cal.4th at p. 1241.) We again emphasized that the accelerated process for issuing a peremptory writ in the first instance is "reserved for truly exceptional cases—primarily those in which a compelling temporal urgency requires an immediate decision. Denying plenary consideration where the petitioner's entitlement to relief is 'obvious' and 'entirely clear' under 'well-settled principles of law and undisputed facts' [citation], is permitted only in extremely narrow circumstances. Application of established law to undisputed facts must leave no room for doubt regarding the proper result. 'Well-settled principles of law' must be set forth in controlling authority that squarely applies to the circumstances of the case before the court. If the respondent or real party in interest presents any reasonable argument that the applicable law is unsettled or does not govern the precise issue presented in light of the particular undisputed facts, or if the application of legal principles set forth in various sources of law might lead to different results, and there is no compelling need for an expedited decision, the court must follow the usual writ procedure and issue an alternative writ or order to show cause." (*Id.* at p. 1261.)

In accordance with *Palma, supra*, 36 Cal.3d 171, our Courts of Appeal typically advise the parties in writ proceedings that issuance of a peremptory writ in the first instance is under consideration, by filing an order requesting informal opposition to the writ petition by a specified date. (See, e.g., Ct. App., Fourth Dist., Div. One, Internal Operating Practices and Proc., V, Original Proceedings.) The usual *Palma* notice directed to the parties in the writ proceeding may read, for example: "The petition for writ of mandate or prohibition filed herein [on date], has been read and considered. [¶] The parties are notified that the court may issue an order for a peremptory writ in the first instance requiring the respondent to [grant the relief sought]. (*Palma*[, *supra*,] 36 C[al.]3d [at p.] 180.) The real party in interest is requested to file and serve opposition on or before [date]." (Civil Writ Practice, *supra*, § 28.7, p. 745.) Because a peremptory writ may issue without further briefing and without oral argument, the response of the respondent (or

any real party in interest) to the *Palma* notice may provide such a party with its *sole* opportunity to be heard in the Court of Appeal on the merits of the writ petition.

## III.

■ The issue presently before us is the propriety of the suggestive type of *Palma* notice. This type of notice clearly complies with the minimum procedural safeguards outlined in *Palma, supra,* 36 Cal.3d 171, in that it provides notice that the Court of Appeal is considering ordering the issuance of a peremptory writ in the first instance, and furnishes an opportunity for the respondent or any real party in interest to oppose issuance of the writ. The problem that occurs, according to GAIC and amicus curiae, is that the suggestive *Palma* notice does not stop there—it also discusses the merits of the writ petition, suggests that the trial court erred in the manner claimed by the petitioner, grants "power and jurisdiction" to the trial court to reconsider the challenged interim order and enter in its place a new order in accordance with the views of the appellate court[5] (in which event the writ petition will be vacated as moot), and solicits opposition to the issuance of a peremptory writ in the first instance only if the trial court fails to follow the appellate court's suggested course of action. (See, e.g., Civil Writ Practice, *supra,* § 28.9, pp. 747–748.)

■ As Brown accurately observes, however, our decisions in *Palma* and subsequent cases do not prescribe any particular form for the notice informing the parties that the Court of Appeal may issue a peremptory writ in the first instance and providing an opportunity for informal opposition. Moreover, these decisions do not prohibit, explicitly or implicitly, an appellate court from addressing the merits of the writ petition in the *Palma* notice, or from explaining the reasons why that court is considering ordering the issuance of a peremptory writ in the first instance. GAIC and amicus curiae respond that, by issuing a suggestive *Palma* notice "strongly encouraging" the trial court to take action in accordance with the relief requested in the writ petition, the Court of Appeal in essence has decided the merits of the writ petition and effectively has issued the peremptory writ in the first instance before the real party in interest has had a meaningful opportunity to respond.

---

[5] This particular language—granting "power and jurisdiction" to the trial court to reconsider the challenged order—appears to be intended to ensure that the lower court will act to change its ruling in accordance with the suggestive *Palma* notice, despite the appellate court's stay of all proceedings subject to the notice. In somewhat more explicit language, such a notice might alternatively provide that the stay of proceedings is modified to permit the respondent court to *change* its order so as to avoid issuance of a peremptory writ. (Civil Writ Practice, *supra,* § 28.9, p. 748.)

We are not persuaded that the issuance of a suggestive *Palma* notice is the effective equivalent of issuing a peremptory writ in the first instance. A peremptory writ of mandate issued by an appellate court and directed at an inferior tribunal is the reviewing court's ultimate order commanding the respondent court to grant the relief requested. Such a writ issues only after the written decision granting the writ petition (and directing that the writ be issued) becomes final, both as to the Court of Appeal and the Supreme Court. Thereafter, the appellate court is authorized to make any orders necessary and proper for the complete enforcement of the writ, and the unexcused neglect or refusal to "obey" a writ may, upon motion, be the subject of a fine and, in the case of persistent refusal, imprisonment, until the writ is obeyed. (§ 1097.)

By comparison, even if styled as an "order," a suggestive *Palma* notice in no sense commands or obligates the trial court to follow the course of action suggested by the appellate court. Rather, in the absence of a peremptory writ, the trial court remains free to stay its course. (Cf. *Ng, supra,* 4 Cal.4th at p. 34 [superior court erred in acting immediately upon the Court of Appeal's opinion ordering issuance of a peremptory writ in the first instance, rather than awaiting issuance of the writ itself, thus necessitating the Supreme Court's emergency action].) A suggestive *Palma* notice acknowledges as much, when it sets a briefing schedule for opposition and reply papers in the event the trial court elects not to act in accordance with the notice.

A suggestive *Palma* notice is more analogous to a tentative ruling, such as may be issued by a civil law and motion department of a superior court prior to oral argument on a motion. (See, e.g., Super. Ct. Riverside County, Local Rules, rule 2.0016; Super. Ct. Sac. County, Local Rules, rule 3.04; Super. Ct. S.F. County, Local Rules, rule 3.5(D).)[6] Tentative rulings "indicate the way the judge is prepared to decide the matter based on the information before him or her when the ruling was prepared." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2009) § 9:111 (rev. # 1, 2007).) Such a tentative ruling, however, becomes the final ruling of the trial court (1) only if the court does not order oral argument in its tentative ruling, and notice of intent to appear is not given by one of the parties, or (2) only after the hearing on the motion is conducted, assuming the court does not then render a different ruling. (Rule 3.1308; see also *Jespersen v. Zubiate-Beauchamp* (2003) 114 Cal.App.4th 624, 633 [7 Cal.Rptr.3d 715] ["Courts are not bound by their tentative rulings."].) Similarly, a suggestive *Palma* notice indicates the manner in which the Court of

---

[6] Similarly, for many years, Division Two of the Fourth District Court of Appeal has utilized a "tentative opinion" procedure by which a preliminary draft opinion is provided to counsel prior to oral argument. (See *People v. Pena* (2004) 32 Cal.4th 389, 394–397 [9 Cal.Rptr.3d 107, 83 P.3d 506]; Ct. App., Fourth Dist., Div. Two, Internal Operating Practices and Proc., VIII, Tentative Opinions and Oral Argument.)

Appeal is prepared to decide the merits of the writ petition, based upon what was before it when the notice was prepared, but such a notice is not binding upon either the trial court or the appellate court. (See, e.g., *Foundation for Taxpayer & Consumer Rights v. Garamendi* (2005) 132 Cal.App.4th 1375, 1383 [34 Cal.Rptr.3d 368] (*Garamendi*) [referring to "tentative conclusions" expressed in suggestive *Palma* notice].) Rather, the conclusions expressed in a suggestive *Palma* notice remain provisional unless and until they are incorporated into a written decision granting the writ petition and directing that a peremptory writ be issued.

Issuance of a tentative ruling allows both sides the opportunity to reevaluate their respective positions in light of the preliminary views expressed by the issuing court on the matter, and to either submit to the tentative ruling, thereby negating the need for oral argument, or to focus their arguments at the subsequent hearing. We presume the transparency provided by a suggestive *Palma* notice is similarly useful. Knowing in advance the reasoning behind the Court of Appeal's present intention to issue a peremptory writ in the first instance should assist the real party in interest in deciding whether to accede to the requested relief and, in the event that party is not inclined to do so, should assist it in tailoring any future opposition. (See, e.g., *Garamendi, supra*, 132 Cal.App.4th at pp. 1382–1383 [although plaintiffs disagreed with tentative conclusions expressed in suggestive *Palma* notice, they stipulated to the relief sought by writ petition].)

Another practical effect of a suggestive *Palma* notice is that it preserves the options available to the appellate court. Because that court has issued a *Palma* notice rather than an alternative writ or an order to show cause, the writ proceeding has not become a " 'cause.' " (See *Palma, supra*, 36 Cal.3d at p. 178 & fns. 5, 6.) Therefore, if the trial court declines to reverse or modify the disputed interim order as suggested in the notice issued by the appellate court, the latter court still may issue a summary denial after receipt of informal opposition. (*Id.* at p. 178.) Alternatively, because the appellate court has complied with *Palma* by providing the requisite notice and soliciting opposition, it may order issuance of a peremptory writ without inviting further briefing or holding oral argument. (*Lewis, supra*, 19 Cal.4th at p. 1237.) Or it may issue an alternative writ, request formal briefing, and hold oral argument before disposing of the petition by way of a written opinion. Finally, the suggestive *Palma* notice may relieve the appellate court of the need to exercise any of these options, thus avoiding further expenditure of the court's scarce resources. Because the notice specifically identifies the error perceived in the trial court's interim order and strongly suggests that the trial court act in accordance with the appellate court's views, it is more likely that

the trial court will so act than had the appellate court simply issued a traditional alternative writ or *Palma* notice.[7]

■ The suggestive *Palma* notice remains, however, merely a recommendation—albeit a strongly worded one—that the trial court reconsider the order challenged by the writ petition in light of the circumstance that the Court of Appeal tentatively has concluded the trial court erred in some respect. (See, e.g., *Luckett, supra,* 147 Cal.App.4th at p. 923 [in response to suggestive *Palma* notice, "trial court reconsidered whether [plaintiff] should post a vexatious litigant's bond"].) In support of its recommendation, an appellate court may, for example, discuss the merits of the writ petition, note that the writ proceeding will become moot if the trial court enters a new order that affords the relief sought in the writ petition, instruct the parties to inform the appellate court if the trial court changes its order, and provide that any stay issued by the appellate court does not preclude the trial court from reconsidering its order in the manner suggested by the appellate court's discussion of the merits. The suggestive *Palma* notice may *not,* however, direct the trial court to change its order, or purport to grant the trial court authority to change its order without first affording the parties notice and an opportunity to be heard in the trial court. For this reason, and to avoid any ensuing confusion, the Court of Appeal should refrain from describing its suggestive *Palma* notice as a "directive," or otherwise suggesting that the trial court must "comply" with the notice. In addition, the suggestive *Palma* notice should acknowledge the procedural safeguards required in the event the trial court does revisit an interim ruling in response to such a notice, as further discussed below.[8]

---

[7] For example, in the present case, the day after the Court of Appeal issued the suggestive *Palma* notice, the trial court vacated the disputed interim order and entered in its place a new order in accord with the views expressed in the notice, after which the writ petition was summarily dismissed as moot. (See also *Luckett v. Keylee* (2007) 147 Cal.App.4th 919, 923 [54 Cal.Rptr.3d 718] (*Luckett*); *Karlsson v. Ford Motor Co.* (2006) 140 Cal.App.4th 1202, 1212–1213 [45 Cal.Rptr.3d 265]; *Travelers Casualty & Surety Co. v. Superior Court* (2005) 126 Cal.App.4th 1131, 1136–1137 [24 Cal.Rptr.3d 751]; *Los Angeles County Dept. of Children & Fam. Services v. Superior Court* (2001) 87 Cal.App.4th 1161, 1164–1165 [105 Cal.Rptr.2d 254].)

[8] What we recognize today with approval is simply a *Palma* notice that both reveals the reasons why the appellate court is considering the issuance of a peremptory writ in the first instance, and acknowledges the obvious circumstance that the writ petition will become moot if the trial court vacates the challenged order. In doing so, we reject the suggestion advanced in the concurring and dissenting opinion that we should muzzle the Courts of Appeal by forbidding them from articulating their preliminary analysis in a *Palma* notice and providing the reasons for the action they presently intend on taking. We also do not share the concurring and dissenting opinion's view that a suggestive *Palma* notice is likely to coerce or intimidate a trial court—the court most familiar with the proceedings—into changing its interim order against its better judgment. To the contrary, we have full confidence in the ability of trial courts to make informed decisions based upon the relevant law and the facts, uncowed by the appellate court's

■ GAIC's alternative argument—that even if the suggestive *Palma* notice procedure is proper, such notice should not issue, absent exceptional circumstances, without the appellate court's first affording the real party in interest an opportunity to file an opposition—does not compel a different result. The California Rules of Court specifically authorize an appellate court to notify the parties that it is considering issuance of a peremptory writ in the first instance *without* requesting preliminary opposition or waiting for a reply. (Rule 8.487(a)(4).)

We acknowledge, however, that although the circumstances in which a *Palma* notice may issue are rare, the availability of this procedure may place appellate counsel for the real party in interest in a difficult situation. On the one hand, counsel do not wish to waste their clients' resources by responding immediately and fully to every writ petition, particularly in light of the circumstance that the overwhelming majority of such petitions are summarily denied. On the other hand, counsel face a risk, albeit a small one, that the appellate court may issue a *Palma* notice and, in response, the trial court may reconsider its ruling, without counsel having vigorously represented their client's interests in the appellate court. Therefore, although not required, in order to help alleviate this practical dilemma we strongly encourage appellate courts to inform the parties—and invite preliminary opposition—in the event the appellate court anticipates taking any action other than summarily denying the writ petition.

## IV.

■ In *Le Francois, supra*, 35 Cal.4th 1094, we held that a trial court has inherent power to reconsider an interim ruling on its own motion. (*Id.* at pp. 1096–1097.) This authority derives from the judiciary's fundamental, constitutionally mandated function to resolve specific controversies between parties. (*Id.* at p. 1104.) Concerns of procedural fairness, however, led us further to conclude that a trial court intending to exercise this power must provide the parties "notice that it may do so and a reasonable opportunity to litigate the question." (*Id.* at p. 1097; see *id.* at pp. 1108–1109.)

At issue in *Le Francois* was a successive motion for summary judgment, which the trial court granted despite the circumstance that the motion was not based upon either new facts or new legal authority, and therefore was not

expression of its tentative views. If anything, the principles set forth above should *fortify* the resolve of those trial courts that, after the receipt of a suggestive *Palma* notice, continue to believe their original order is correct. On the other hand, should the trial court determine that reconsideration is appropriate in response to a suggestive *Palma* notice, the parties now will receive notice and an opportunity to be heard before the trial court proceeds.

authorized by either section 437c, subdivision (f)(2) or section 1008.[9] We held that, although these provisions limit the circumstances in which a party may seek reconsideration, they "do not limit the court's ability, on its own motion, to reconsider its prior interim orders so it may correct its own errors." (*Le Francois, supra,* 35 Cal.4th at p. 1107.) Interpreted in this manner, the statutes serve their purpose of limiting the ability of litigants to waste the court's resources by repeatedly bringing the same motion—without impairing the court's ability properly to resolve controversies and ensure the orderly administration of justice. (*Id.* at p. 1104.)

We explained in *Le Francois* that it is immaterial what may have triggered a trial court's insight that its interim order might be erroneous: "We cannot prevent a party from communicating the view to a court that it should reconsider a prior ruling (although any such communication should never be ex parte). We agree that it should not matter whether the 'judge has an unprovoked flash of understanding in the middle of the night' [citation] or acts in response to a party's suggestion. If a court believes one of its prior interim orders was erroneous, it should be able to correct that error no matter how it came to acquire that belief." (*Le Francois, supra,* 35 Cal.4th at p. 1108; see, e.g., *In re Marriage of Barthold* (2008) 158 Cal.App.4th 1301, 1308 [70 Cal.Rptr.3d 691] [although motion for reconsideration that is unsupported by new legal authority or new evidence violates § 1008, such a motion may inspire the trial court to reconsider its previous decision on its own motion].)

Finally, in *Le Francois* we addressed the procedures to be followed when there is a suggestion, or when there exists a concern, that an interim ruling is erroneous. "The court need not rule on any suggestion that it should reconsider a previous ruling and, without more, another party would not be expected to respond to such a suggestion." (*Le Francois, supra,* 35 Cal.4th at p. 1108.) But, "[t]o be fair to the parties, if the court is seriously concerned that one of its prior interim rulings might have been erroneous, and thus that it might want to reconsider that ruling on its own motion—something we think will happen rather rarely—*it should inform the parties of this concern, solicit briefing, and hold a hearing.* [Citations.] Then, and only then, would a

---

[9] Section 437c, subdivision (f)(2), limits a party's ability to renew a motion for summary judgment. It provides: "[A] party may not move for summary judgment based on issues asserted in a prior motion for summary adjudication and denied by the court, unless that party establishes to the satisfaction of the court, newly discovered facts or circumstances or a change of law supporting the issues reasserted in the summary judgment motion." Section 1008, the statute generally governing motions for reconsideration, allows a party to seek reconsideration of a prior order only if the party's motion demonstrates new or different facts, circumstances, or law. Alternatively, section 1008 provides that if the court determines there has been a change of law that warrants reconsideration, it may reconsider a prior order on its own motion.

party be expected to respond to another party's suggestion that the court should reconsider a previous ruling. This procedure provides a reasonable balance between the conflicting goals of limiting repetitive litigation and permitting a court to correct its own erroneous interim orders." (*Id.* at pp. 1108–1109, italics added; see, e.g., *Montegani v. Johnson* (2008) 162 Cal.App.4th 1231, 1238 [76 Cal.Rptr.3d 621] [after trial court determined it should reconsider an interim order in light of intervening case law, it informed the parties of its concern, requested briefing, and held a hearing]; *Nickolas F. v. Superior Court* (2006) 144 Cal.App.4th 92, 98–99 [50 Cal.Rptr.3d 208] [juvenile court had statutory and constitutional authority to modify its prior disposition order, on its own motion, after giving the parties notice and an opportunity to be heard].)

Similar concerns of fairness lead us to conclude that the procedural protections outlined in *Le Francois, supra,* 35 Cal.4th 1094, should apply when a trial court, in response to a suggestive *Palma* notice, decides to revisit an interim ruling. It is, of course, understandable that the receipt of a suggestive *Palma* notice, which typically explains in some detail the factual and legal basis for the appellate court's present intention to issue a peremptory writ in the first instance, may prompt the trial court to reconsider the challenged interim ruling. After all, as we consistently have emphasized, the accelerated *Palma* procedure "should be adopted only when petitioner's entitlement to relief is so obvious . . . for example, when such entitlement is conceded or when there has been clear error under well-settled principles of law and undisputed facts." (*Ng, supra,* 4 Cal.4th at p. 35.) In view of the nonbinding nature of a suggestive *Palma* notice, however, a trial court that is inspired to act in response to such a notice necessarily acts on its own motion. We therefore conclude that before vacating, modifying, or otherwise reconsidering an interim ruling in response to a suggestive *Palma* notice, the trial court must inform the parties that it is considering taking such action and provide them with an opportunity to be heard. This procedure reasonably balances the interest in conserving scarce judicial resources with the parties' right to notice and an opportunity to be heard. It also should assist in forestalling any errors by the trial court resulting from the appellate court's issuance of a suggestive *Palma* notice that is based upon an incomplete or inaccurate writ petition to which there has been no response, and further assist in avoiding subsequent writ or appellate proceedings that might be brought to challenge such errors.[10]

---

[10] The amicus curiae brief filed in this court by the California Academy of Appellate Lawyers has been of great assistance in resolving the issues presented by this case. One issue raised by that brief—the propriety of so-called "suggestive" or "speaking" alternative writs—is not before the court and therefore is not addressed in this opinion. We do note, however, that following the issuance of *any* alternative writ, there is always the possibility that the trial court will comply with the writ, and that the appellate court will dismiss the petition as moot. (See,

## V.

In light of the foregoing conclusions we reach, the Court of Appeal did not err in issuing its August 28, 2007, order comprising the suggestive *Palma* notice here at issue. As noted, subsequent settlement of the litigation underlying Brown's writ petition has rendered moot the relief sought in that petition. We therefore affirm the Court of Appeal's judgment dismissing the writ proceeding.

Kennard, J., Baxter, J., and Chin, J., concurred.

**WERDEGAR, J.,** Concurring and Dissenting.—The questions we face are whether "suggestive" or "coercive" *Palma* notices[1] are permissible, given the strictures of Code of Civil Procedure section 1088 and the California Rules of Court, and whether, even if so, we should countenance them in the exercise of our supervisory powers over the courts of this state. The answer to the first of these questions is "probably not"; the answer to the second, I submit, is an unqualified "no." Accordingly, on the merits of this appeal, I respectfully dissent.[2]

### I

My colleagues and I agree on many points. For one, we agree it is critical in writ proceedings for parties to have notice and the opportunity to submit briefing to the decision maker before adverse action is taken. (See maj. opn., *ante*, at pp. 1248–1250.) For another, we agree that conservation of judicial resources—to the extent it can be accomplished without compromising the interests of litigants in fair hearings—is an admirable and worthy goal. What we disagree over is the extent to which suggestive *Palma* notices, even as modified by the additional trial court proceedings the majority proposes (maj. opn., *ante*, at pp. 1248–1250), satisfy these goals.

In *Palma*, we interpreted Code of Civil Procedure section 1088's requirement that "due notice" be provided before a peremptory writ could issue. We

e.g., Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2008) §§ 15:157.5–15:157.6, pp. 15-74 to 15-75 (rev. # 1, 2009).) It follows that under the principles set forth above, if a trial court is considering changing an interim order in response to an alternative writ, it must give the respective parties notice and an opportunity to be heard.

[1] *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171 [203 Cal.Rptr. 626, 681 P.2d 893] (*Palma*). In a suggestive or coercive *Palma* notice, a Court of Appeal intimates to the parties to a writ proceeding, and to the trial court, that it will probably grant peremptory writ relief unless the trial court reverses itself. While one may debate what terms best describe these notices, for convenience I accept the majority's choice of nomenclature and will refer to them as suggestive.

[2] Because this case is moot, I agree the Court of Appeal's judgment dismissing the writ proceeding technically should be affirmed, and to that limited extent I concur.

identified both notice and an opportunity to be heard as essential prerequisites: "[A] peremptory writ of mandate or prohibition [may] not issue in the first instance unless the parties adversely affected by the writ have received notice, from the petitioner or from the court, that the issuance of such a writ in the first instance is being sought or considered. In addition, an appellate court, absent exceptional circumstances, should not issue a peremptory writ in the first instance without having received, or solicited, opposition from the party or parties adversely affected." (*Palma, supra,* 36 Cal.3d at p. 180.) A traditional *Palma* notice satisfies these requirements: The party opposing the writ receives notice and is given time to file opposition in the Court of Appeal before that court decides the merits of the writ. Here in contrast, where the Court of Appeal issued a suggestive *Palma* notice instead, the proceedings below violated *Palma*'s requirements.

This case arises from an insurance coverage dispute. Law firm Brown, Winfield & Canzoneri, Inc. (Brown Winfield), was sued for malpractice by Azusa Pacific University based on the firm's handling of an eminent domain action. Brown Winfield sought coverage from its malpractice carrier, Great American Insurance Company (Great American); Great American accepted defense of the action with a reservation of rights, but also filed a declaratory relief action asserting there was no coverage. Brown Winfield obtained a stay of the declaratory relief action pending decision of the underlying malpractice case, but in 2007 the trial court lifted the stay.

On Brown Winfield's petition for writ relief, the Court of Appeal issued the suggestive *Palma* notice at issue here. The notice discussed the merits at length and strongly suggested the trial court had erred in lifting the stay. Having done so, the Court of Appeal gave the trial court jurisdiction to change its mind and enter a revised order. The trial court did so the next day and the Court of Appeal dismissed the petition two weeks later, all without any briefing or opportunity by Great American to be heard.

While Great American technically was provided notice, one may question how meaningful the notice was in light of the fact it was issued after the close of business on August 28, 2007, and elicited a reversal from the trial court less than 24 hours later.[3] More clearly, the proceedings below violated the requirement that an opportunity to present opposition be provided parties opposing issuance of a writ before the matter is adjudicated. (*Palma, supra,* 36 Cal.3d at p. 180; Code Civ. Proc., § 1088.) Were Great American's counsel Superman himself, he could not have prepared an opposition brief and filed it in time for the Court of Appeal to read it, rethink its position, issue a new

---

[3] Our copy of the notice shows it was faxed by the Court of Appeal clerk's office at 6:25 p.m. on August 28. The trial court's minute order is dated August 29 at 1:30 p.m.

order reversing itself, and have the trial court receive and consider that new order before reversing itself.

This case illustrates how a suggestive *Palma* notice subverts the orderly process we intended before a peremptory writ could issue. By issuing a suggestive notice, the Court of Appeal—the decision maker on the writ—expresses an opinion on the merits without having ever heard from the opposing side. That this decision can be deemed "tentative" (maj. opn., *ante*, at pp. 1245–1246) does not redeem the process. When a court issues a tentative decision, the party who stands to lose generally has a chance to argue its side *to that court* in hopes of persuading it to reconsider and reach a different decision. A suggestive *Palma* notice denies writ opponents this opportunity because it effectively sends the case back to the trial court *immediately*, thus permitting (or, as in this case, encouraging) the issue to be resolved in the trial court without further proceedings in the Court of Appeal. Here, of course, the problem was amplified by the trial court's speedy response, which meant that Great American was unable to tell its side to *either* court.

While it is true we acknowledged in *Palma* that it might suffice for a Court of Appeal to merely *solicit* informal opposition from the potentially adversely affected party (*Palma, supra*, 36 Cal.3d at p. 180), we did so in contemplation of a situation where that party, afforded a reasonable time in which to submit briefing, voluntarily elected to forgo its opportunity to put forward the merits of its position. We did not contemplate a situation where, as here, the adversely affected party was provided no meaningful opportunity to explain why a peremptory writ should not issue.[4] Nor does it matter that no writ was *actually* issued because the trial court, attuned to the clear import of the Court of Appeal's notice, did as directed and reversed itself. (See maj. opn., *ante*, at pp. 1240, 1245.) The sine qua non of a peremptory writ under *Palma*, meaningful notice and an opportunity to be heard, was lacking here. The majority's unsupported contention to the contrary (maj. opn., *ante*, at p. 1244) is disingenuous and simply wrong.[5]

---

[4] Notably, the notice here gave only a conditional right of response; *if* the trial court had not already reversed itself, Great American could file a response within 13 days. As the trial court reversed itself the very next day—an occurrence that is probably not uncommon, given the strong wording of notices like this one—Great American had no opportunity to respond.

[5] The acknowledgement that "exceptional circumstances" might warrant proceeding without an opportunity for opposition (*Palma, supra*, 36 Cal.3d at p. 180) does not come into play here. Given that *Palma* was discussing the procedural requirements for issuing a peremptory writ, which itself requires highly unusual circumstances, the exceptional circumstances it alluded to cannot be simply those that would justify a peremptory writ—clear error or exigent circumstances. That is, if every time the preconditions for a peremptory writ were present, the preconditions for skipping opposition were also present, the "requirement" would be an empty one. The exceptional circumstances that might warrant proceeding without opposition may, I

Moreover, the proceedings here also failed to comport with the California Rules of Court, which provide: "If the court notifies the parties that it is considering issuing a peremptory writ in the first instance, the respondent or any real party in interest may serve and file an opposition." (Cal. Rules of Court, rule 8.487(b)(1).) While "may" is permissive rather than mandatory, the most credible reading of this provision is that an adversely affected party has a right, but may choose not to exercise that right, to oppose issuance of a peremptory writ. Suggestive *Palma* notices like the one issued here cannot be reconciled with that right.[6]

As a practical matter, the majority's proposal to permit suggestive *Palma* notices, provided the trial court solicits briefing before acquiescing in the Court of Appeal's views on an issue, does not in my view cure these failings. What Code of Civil Procedure section 1088, *Palma, supra,* 36 Cal.3d 171, and rule 8.487(b)(1) of the California Rules of Court all focus on is the importance of a meaningful opportunity to be heard by *the decision maker, the entity with the ultimate authority on a question.* In suggestive *Palma* notice situations, the Court of Appeal, not the supposedly mistaken trial court, is the true decision maker. Consequently, the opportunity to be heard in the trial court may prove illusory. Rare, I believe, is a trial court that would adhere to its initial ruling in the face of a Court of Appeal's written assessment that it was patently wrong. Critically, if the position advanced in the suggestive *Palma* notice is flawed because of something the Court of Appeal overlooked, the trial court, unaware of this oversight from the text of the notice itself, may be reluctant to rely on such an overlooked ground as dispositive; presented with a meritorious but overlooked argument, the trial court is likely to reverse itself anyway. I cannot see from a fairness perspective, or a perception of fairness perspective—affording litigants the sense they have been heard and had their day in court—how this is superior to having Courts of Appeal wait a few extra days for opposition briefing.[7]

think, reasonably be confined to cases where the peremptory writ is justified by exigent circumstances—where time truly is of the essence—rather than cases where the writ is justified only by the (apparent) obviousness of the trial court's error. Even then, depending on just *how* exigent the circumstances are, there may be time for a Court of Appeal to solicit oral or written input from the parties on a greatly expedited schedule.

[6] In concluding that suggestive *Palma* notices are consistent with the California Rules of Court, the majority addresses only rule 8.487(a)(4), which permits a court to issue notice that it is considering issuance of a peremptory writ without first obtaining preliminary opposition. It disregards that rule's subdivision (b)(1), which governs the right to submit briefing *after* notice that a peremptory writ is being contemplated has been sent.

[7] The majority opinion suggests that depriving the Courts of Appeal of the use of suggestive *Palma* notices would amount to "muzzl[ing]" them. (Maj. opn., *ante,* at p. 1247, fn. 8.) Not so. The vice of such notices lies in the invitation to trial courts to unburden the Courts of Appeal from further proceedings—the "strong[] suggest[ion] that the trial court act in accordance with the appellate court's views" (maj. opn., *ante,* at p. 1246)—thereby placing litigants in the position of losing without a bona fide opportunity to be heard before the true decision maker in

## II

The urge to look past the requirements of *Palma* and the California Rules of Court might be at least understandable, if still unjustified, were there some significant administrative benefit to the suggestive *Palma* procedure in either its original form or as modified by the majority. There is not.

That suggestive *Palma* notices have saved Courts of Appeal a small amount of time, albeit at the likely cost of having some litigants feel they were deprived of a fair hearing, may be true. But Court of Appeal economy is not the same as judicial economy, and the transfer of decisionmaking from one court level to another is not necessarily a resource saver in the aggregate. We must consider the costs to the court system as a whole, at the trial as well as at the appellate level. That the trial court proceedings the majority now proposes involve any increased judicial efficiency over the usual *Palma* procedure is not apparent.[8]

From an efficiency perspective, moreover, a more pernicious unintended consequence of today's decision for both courts and litigants is likely. As amicus curiae the California Academy of Appellate Lawyers ably explained in its briefing and at oral argument, attorneys advising their clients how or whether to oppose a writ petition must take into account the full range of potential outcomes they face. Before today, attorneys could safely advise their clients that doing nothing, or filing a preliminary opposition limited solely to the petitioner's failure to establish the essential procedural prerequisites for writ relief, would not cost their clients the opportunity to be heard on the merits by the court with ultimate decisionmaking power in the matter. From the perspective of client advice, whether I or the majority is right about the sufficiency of trial court briefing as a substitute for briefing in the Court of Appeal matters not. If any significant number of attorneys *perceive* being returned to the trial court with the deck stacked against them is a risk and less desirable than remaining in the Court of Appeal with an opportunity to brief why relief should be denied, or simply wish to insulate themselves from client criticism such a turn of events might entail, the Courts of Appeal can expect to see a rise in the number of full-blown preliminary opposition briefs addressing the merits of a writ petition. Increasingly, writ briefing may

---

a case. Nothing in *Palma* would foreclose a Court of Appeal from offering an account of its preliminary views in a *Palma* notice, so long as it also made clear further proceedings were to be conducted in that court and not the trial court. That is not what was done here, nor, it would appear, is it generally the case with suggestive *Palma* notices. (See Cal. Civil Writ Practice (Cont.Ed.Bar 4th ed. 2009) § 22.22, pp. 603–604; *id.*, § 28.9, pp. 747–748.)

[8] Moreover, if a trial court standing in the shadow of a suggestive *Palma* notice reverses itself erroneously, for reasons the Court of Appeal overlooked but that could have been expeditiously called to its attention had briefing occurred initially in that court, a second trip up to the Court of Appeal will be necessary. This is the opposite of efficiency.

become frontloaded. Consideration of such briefs will necessarily consume more Court of Appeal time and resources, to say nothing of the extra cost to the litigants.

The majority's solution for this problem is to encourage—but not require—Courts of Appeal to notify the parties and invite opposition before taking any action other than summarily denying a writ. (Maj. opn., *ante*, at p. 1248.) But *Palma* and the Code of Civil Procedure already *require* this for peremptory writs. (*Palma*, *supra*, 36 Cal.3d at p. 180; Code Civ. Proc., § 1088.) If the suggestion is for Courts of Appeal to issue a presuggestive *Palma*-notice notice—a new and additional "*Brown Winfield*" notice, if you will—to just eliminate suggestive *Palma* notices would seem far simpler.

### III

The original *Palma* procedure was not broken; it did not need fixing. It should have sufficed here for this court to remind the Courts of Appeal that the *Palma* procedure is to be rarely, not routinely, invoked, and that the procedure requires an opportunity for briefing before the Court of Appeal reaches the merits of a writ petition. (See *Palma*, *supra*, 36 Cal.3d at p. 180.) No sound reason exists to dispense with *Palma*'s requirements of notice and an opportunity for the opposing party to be heard in the Court of Appeal.

The majority acknowledges that *Palma* notices are appropriate only in the "rare circumstances" (maj. opn., *ante*, at p. 1237) where immediate action is required or the trial court's error is utterly indisputable, and I fully agree with that sentiment. (See *Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1261 [82 Cal.Rptr.2d 85, 970 P.2d 872] ["We emphasize, however, as we have in previous decisions, that the accelerated *Palma* procedure is reserved for truly exceptional cases—primarily those in which a compelling temporal urgency requires an immediate decision."]; *Alexander v. Superior Court* (1993) 5 Cal.4th 1218, 1223 [23 Cal.Rptr.2d 397, 859 P.2d 96], overruled on other grounds by *Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 724, fn. 4 [3 Cal.Rptr.3d 623, 74 P.3d 726]; *Ng v. Superior Court* (1992) 4 Cal.4th 29, 35 [13 Cal.Rptr.2d 856, 840 P.2d 961] ["We stress that the accelerated *Palma* procedure is the exception; it should not become routine."].)[9] But the rest of the majority opinion effectively undermines this view. By giving our imprimatur to the suggestive *Palma* procedure, we inevitably will encourage its spread, and with it, I fear, further overuse and abuse of the *Palma* procedure itself.

---

[9] We are advised by counsel for amicus curiae that some courts now routinely include *Palma* notices in their initial form notices requesting preliminary opposition. Whatever convenience this might afford the Courts of Appeal, it defeats the purpose of the *Palma* notice, which is to provide actual notice that a peremptory writ is in fact being contemplated, and is at odds with our repeated admonitions that *Palma* procedures are to be reserved for exceptional cases.

For these reasons, I disagree with the majority's conclusion that the Court of Appeal did not err in issuing a suggestive *Palma* notice, a notice that resulted in Great American having a ruling in its favor reversed by the trial court less than 24 hours later with no opportunity to be heard. I further disagree with the majority's decision to erect elaborate new procedural requirements to cure the unadmitted flaws in the suggestive *Palma* notice procedure, a step that may do little to cure those flaws and is likely to entail its own unintended consequences.

Moreno, J., and Corrigan, J., concurred.