Filed 5/28/14  P. v. Super. Ct. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF CONTRA COSTA COUNTY,<br><br>　　　Respondent;<br><br>JULIO LANDAVERDE,<br><br>　　　Real Party in Interest. | A141766<br><br>(Contra Costa County<br>Super. Ct. No. 51402619) |

After the trial court dismissed count one of a felony information charging real party in interest Julio Landaverde (defendant) with residential burglary (Pen. Code,[1] § 460, subd. (a)), the People filed a petition for writ of mandate asking that we vacate the trial court's order and direct it to enter a new order denying defendant's motion to dismiss the burglary charge.  Upon receiving the People's petition, we stayed trial court proceedings, requested opposition, and placed the parties on notice that we may choose to act by issuing a peremptory writ in the first instance pursuant to *Palma v. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171.  For the reasons set forth below, we now grant the People's petition for writ of mandate and dissolve the stay of trial court proceedings.

---

[1] Further statutory references are to the Penal Code unless otherwise noted.

## BACKGROUND

In November 2013, the Contra Costa County District Attorney (DA) filed a felony complaint charging defendant with domestic violence battery, residential burglary, assault by force likely to produce great bodily injury, child abuse, violation of a restraining order, stalking, and petty theft. A preliminary hearing was held on January 24 and 27, 2014. At the preliminary hearing, the victim, Gladis Galdamez, testified through an interpreter that defendant is her husband; they met in El Salvador and she has been with him 11 years. They have two children, Jeremy and Isela. In August 2012, Galdamez obtained a criminal protective order against defendant as well as a civil restraining order issued by family court; both are no-contact, stay-away orders.

Galdamez further testified that on November 20, 2013, she and her children returned home from the park and her daughter left the door to the house partially open. Defendant then entered the house without Galdamez's permission and tried to hug her. Galdamez told defendant not to touch her. Defendant hit her in the stomach and grabbed her arm. The children saw defendant hit Galdamez. Jeremy said, "Don't do that to mommy" and grabbed defendant by the belt. At that point, defendant received a phone call and went out onto an outside balcony to take the call. Jeremy locked the door to the balcony. Galdamez went to her bedroom, intending to call the police. Isela opened the balcony door for her father and then came into the bedroom. Before Galdamez could call the police, Isela began showing Galdamez her homework. A few seconds later, defendant entered the bedroom and tried to grab the homework as well as Galdamez's phone. Defendant said Galdamez had provoked him and punched her in the face with his fist, hitting her just below the right eye. Defendant left and Galdamez called the police; defendant took the keys to the apartment as he left and also punched a hole in the wall. Galdamez's brother, Vladimir, lives with her and he took her to the hospital.

Vladimir testified he took his sister to the hospital on the evening of the incident in question and afterwards returned home with the children. Later, after Jeremy was in bed,

2

he fell asleep on the sofa with Isela. Vladimir was wakened by defendant hitting him on the chest with his fist. Defendant wanted to know Galdamez's whereabouts and Vladimir told defendant she was in the hospital. Defendant was angry because he could not talk to Galdamez. Defendant hit Vladimir in the face and began throttling him by the neck. Isela yelled, "Let go of my uncle." Isela called the police and defendant ran off.

At the conclusion of testimony, in regard to the residential burglary count, the magistrate stated: "I see nothing in particular that suggests that the defendant entered the premises to commit a theft. . . . [¶] The next question is, . . . [who] did he entertain an intent to commit some act of violence upon?" On that point, the court magistrate noted that when defendant entered the home, he "tried to hug her or asked if she would hug him, which is inconsistent with an intent" to commit violence upon entry. The prosecutor stated: "He entered twice. Both times he entered with the intent to commit stalking; and the second time [when Vladimir was at home] he entered with the intent to commit dissuasion of a witness."

In delivering its ruling, the magistrate stated: "I don't find there is sufficient evidence with respect to Count Two [residential burglary], and . . . the reason for that revolves around the whole issue of what intent [defendant] had when he entered the premises . . . . [T]he evidence . . . does not indicate to me that he had the intent to commit any sort of theft or larceny nor does it indicate to me that he had the intent to commit any other felony when he entered the premises, including particularly stalking, which I'll get to later." The court subsequently threw out the stalking charge for insufficiency of the evidence.

Thereafter, on February 6, 2014, the DA filed a seven-count, felony information charging defendant as follows: count one—first degree residential burglary; count two—felony infliction of corporal injury on a spouse; count three—misdemeanor violation of court order; count four—felony assault [on Vladimir]; count five—misdemeanor child cruelty; count six—misdemeanor child cruelty; count seven—misdemeanor petty theft.

3

On March 26, 2014, defendant filed a motion to dismiss count one of the information pursuant to sections 739 and 995. The People opposed the motion to dismiss, arguing that at the preliminary hearing the magistrate found insufficient evidence for burglary at the time of entry to the home, but made no finding related to intent at the time of entry to the bedroom. Relying on *People v. Sparks* (2002) 28 Cal.4th 71 (*Sparks*), the People asserted defendant's entry into the bedroom with the intent to beat the victim satisfied the intent element of residential burglary.

On April 16, the court held a hearing on the motion to dismiss. After entertaining argument of counsel, the court granted defendant's motion to dismiss the burglary count. Noting that the "required intent must exist at the time of the entry," the court found that upon defendant's initial entry into the victim's house, defendant "intended some sort of reconciliation rather than the commission of a theft or a felony." Turning to the "second entry" of the victim's house, the court found there no evidence showing defendant entered with the intent of assaulting Vladimir Galdamez. After granting defendant's motion to dismiss the burglary charge, the following colloquy took place: "THE COURT: And that means that Count 1 is now dismissed. [¶] . . . [¶] Any questions? [¶] MR. SEYMOUR [Prosecutor]: Yes, Your Honor. When Your Honor says 'structure,' Your Honor is referring to the home itself and not the entry into the [bed]room? [¶] THE COURT: I was also referring to the separate entry into the room, and I was -- although I didn't specifically refer to it, there's even a third possible argument that you were making about him coming back from the balcony. [¶] MR. SEYMOUR: That was the argument that I briefed, yes. [¶] THE COURT: And I think that there was a sufficient time delay with the balcony door was locked and eventually unlocked by, I think, the daughter that I don't think he had the intent either on the third thing, if I didn't specifically say that, coming in from the balcony. [¶] So for all of those reasons, I am still in agreement with the fact that he shouldn't be facing a residential burglary charge in this one. [¶] All right. Thank you."

4

**DISCUSSION**

"An information will not be set aside if there is some rational ground for assuming the possibility that an offense has been committed and that the accused is guilty of it. [Citation.] The information will be set aside only where there is no evidence that a crime has been committed or there is no evidence to connect the defendant with a crime shown to have been committed. [Citation.] Every legitimate inference that may be drawn from the evidence must be drawn in favor of the information. [Citation.]" (*People v. Superior Court* (*Smart*) (1986) 179 Cal.App.3d 860, 864, italics omitted.)

Here, the magistrate and the respondent court determined that no probable cause existed to support a charge of residential burglary. "This determination, based upon undisputed facts, constituted a legal conclusion which is subject to independent review on appeal." (*People v. Watson* (1981) 30 Cal.3d 290, 300.) In such a case, the function of the appellate court is to "determine whether a person of ordinary caution or prudence would be led to believe and conscientiously entertain a strong suspicion that the defendant committed the crime charged." (*Smart, supra,* 179 Cal.App.3d at pp. 864–865; see also *People v. Superior Court* (*Lujan*) (1999) 73 Cal.App.4th 1123, 1127 ["A defendant may be held to answer 'if there is some rational ground for assuming the possibility that an offense has been committed and that the accused is guilty of it.' "].)

Patently, the People's theory of burglary based on the above facts is viable under *People v. Sparks, supra,* 28 Cal.4th 71, which the People cited in the opposition brief filed below and also rely on in their writ petition. In *Sparks,* our Supreme Court stated: "Section 459 of the Penal Code provides, in part, that one who 'enters *any* house, *room*, apartment, . . . store, . . . or other building . . . with intent to commit ... larceny or any felony is guilty of burglary.' (Italics added.) We granted review to address a conflict in Court of Appeal decisions concerning whether a defendant's entry into a bedroom within a single-family house with the requisite intent can support a burglary conviction if that intent was formed only after the defendant's entry into the house. We conclude that such

5

an entry can support a burglary conviction under section 459, and hence reverse the judgment of the Court of Appeal, which reached a contrary conclusion." (*Id.* at p. 73.)

Moreover, the facts presented here are more than sufficient to permit a person of "ordinary caution" to "entertain a strong suspicion" that defendant committed the crime of burglary after he left the outside balcony and entered the victim's bedroom with the intention of committing an assault (*Smart, supra,* 179 Cal.App.3d at p. 865), which intent may be inferred from the fact defendant had punched the victim in the stomach and grabbed her by the arm only minutes before, was interrupted by a phone call and then assaulted her again immediately upon entry into her bedroom. (Cf. *People v. Abilez* (2007) 41 Cal.4th 472, 508 [noting intent is "often proved by circumstantial evidence"].)

In sum, there is ample evidence here, based on the theory of burglary affirmed by the Supreme Court in *Sparks, supra,* 28 Cal.4th 71, to hold defendant to answer for residential burglary.

## DISPOSITION

In accordance with our prior notification to the parties that we might do so, we will direct issuance of a peremptory writ in the first instance. (*Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177–180.) The People's right to relief is obvious, and no useful purpose would be served by issuance of an alternative writ or by further briefing and oral argument. (*Ng v. Superior Court* (1992) 4 Cal.4th 29, 35; see also *Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1236–1237, 1240–1241; *Brown, Winfield & Canzoneri, Inc. v. Superior Court* (2010) 47 Cal.4th 1233, 1243–1244.)

Let a peremptory writ of mandate issue commanding respondent the Superior Court of Contra Costa County, in case no. 51402619, to vacate its order dismissing count one of the felony information against defendant and to enter a new and different order denying defendant's motion to dismiss the charge. Our decision is final in this court

6

immediately. (Cal. Rules of Court, rule 8.490(b)(2)(A).)  The stay of trial court proceedings imposed by this court on May 9, 2014, is hereby dissolved.[2]


                              _____

                              Dondero, Acting P.J.


We concur:


_____

Banke, J.


_____

Becton, J.[*]

---

[2]  After the trial court complies with the directives of the peremptory writ, the People are respectfully requested to voluntarily dismiss as moot the related appeal in *People v. Landaverde* (A141639), which the People filed in order to preserve this issue.

[*] Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.