Filed 12/15/14  Brookler v. RadioShack CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

|  |  |
|---|---|
| MORRY BROOKLER et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>RADIOSHACK CORPORATION,<br><br>Defendant and Respondent. | B256260<br>(Los Angeles County<br>Super. Ct. No. BC313383) |

APPEAL from an order of the Superior Court of Los Angeles County. Michael L. Stern, Judge.  Reversed and remanded with directions.

Law Offices of Ian Herzog, Ian Herzog and Evan D. Marshall; Law Offices of Stephen Glick and Stephen Glick; Daniels, Fine, Israel, Schonbuch & Lebovits, Paul R. Fine and Scott A. Brooks for Plaintiffs and Appellants.

Jones Day, Randy S. Grossman and Beong-Soo Kim; Niddrie, Fish & Addams and Michael H. Fish for Defendant and Respondent.

_____

## INTRODUCTION

The plaintiffs appeal from the trial court's order sustaining without leave to amend the defendants' demurrer to their second amended complaint based on the trial court's refusal to consider further class certification proceedings in this action—consideration expressly contemplated in our prior decision. Accordingly, we reverse the trial court's order and remand the matter with directions.

## FACTUAL AND PROCEDURAL SUMMARY

*Initial Proceedings in the Trial Court.*

In 2004, Morry Brookler, in his individual capacity and on behalf of others similarly situated, filed his first amended complaint against RadioShack, alleging meal period and other violations. In May 2005, Brookler filed a motion for class certification, arguing the law required an employer to "ensure" that a 30-minute uninterrupted meal period is actually taken by the employee. RadioShack opposed the motion, arguing the law only required an employer to "provide" a meal period. In February 2006, the trial court certified a class consisting of 'all non-exempted employees at RadioShack stores in California from April 7, 2000 through the present who were not provided an uninterrupted 30-minute meal break following every 5 continuous hours of work." Citing *Cicairos v. Summit Logistics, Inc*. (2005) 133 Cal.App.4th 949, 963 (*Cicairos*), the trial court ruled an employer has "an affirmative obligation to ensure that workers are actually relieved of all duty," and common factual questions (that a meal period was missed or cut short) predominated and no individualized inquiry (as to the reason the meal period was missed or shortened) was needed to establish liability.[1]

In July 2008, the Fourth District, Division One, published its (subsequently depublished) opinion in Brinker Restaurant v. Superior Court, holding that California law

---

[1] RadioShack's subsequent writ petition and petition for review were summarily denied.

2

requires an employer to *provide* uninterrupted 30-minute meal periods, but does not require the employer to *ensure* such meal periods are taken. In August, RadioShack filed a motion to decertify the class based on the Court of Appeal's decision in Brinker. In October, after taking the matter under submission, the trial court granted RadioShack's motion for decertification under the Fourth District's decision in Brinker.

Later that same month (in October 2008), the California Supreme Court granted review in Brinker, and Brookler then appealed the trial court's class decertification order. *Brookler I.*

In August 2010, we reversed the trial court's order granting RadioShack's class decertification motion: "Our Supreme Court's decision in *Brinker* will resolve this issue. In the meantime, however, unless and until our Supreme Court holds otherwise, we agree with and adopt the analysis in *Cicairos, supra*, 133 Cal.App.4th 949, holding an employer's obligation under the Labor Code and IWC wage orders is to do more than simply permit meal periods in theory; it must also provide them as a practical matter. If the employer does not ensure compliance with meal period requirements, such behavior violates the Labor Code and corresponding wage orders. (See *id*. at p. 963.)" (Brookler v. RadioShack Corp. (B212893, Aug. 26, 2010 [nonpub. opn.] (*Brookler I*).)

In September 2010, RadioShack filed a petition for review of this decision. In November, our Supreme Court granted review in *Brookler I* (S186357), deferring further action pending the decision in Brinker. In June 2012, our Supreme Court transferred the matter back to this court, "with directions to vacation [our prior] decision and to reconsider the cause in light of *Brinker Restaurant v. Superior Court* (2012) 53 Cal.4th 1004."

*Brookler II.*

In the parties' supplemental briefing on remand from the Supreme Court, Brookler argued certification of subclasses was appropriate under the circumstances presented, while RadioShack argued Brookler should be precluded from seeking certification of

3

subclasses.  In *Brookler II*, we concluded none of the appellate proceedings addressed the issue of subclasses or barred the trial court from considering the issue of subclasses on remand.  (*Brookler v. RadioShack Corp.* (Dec. 5, 2012, B212893) [nonpub. opn.] (*Brookler II*).)

*Proceedings on remand to the trial court.*

Brookler filed a motion for leave to amend his complaint which the trial court granted, and Brookler filed his second amended complaint on July 18, 2013, alleging claims on behalf of five new sub-classes. More particularly, Brookler added Johnny Triplett as an additional named plaintiff and class representative and asserted the following causes of action:  (1) meal period compensation; (2) rest period compensation; (3) failure to maintain required records; (4) failure to pay wages due former employees in violation of Labor Code section 203; (5) violations of Business and Professions Code section 17200 et seq; (6) miscalculating the overtime rate of pay; and (7) recovery of penalties under the Labor Code Private Attorney General Act of 2004.[2]

Brookler defined the following subclasses: Sub-Class 1 comprised of hourly employees who worked off-the-clock while clocked out for a meal break; Sub-Class 2, hourly employees who were not allowed to take a meal period because they worked alone or with a trainee; Sub-Class 3A, hourly employees subject to RadioShack's rest period policy in effect prior to April 1, 2001; Sub-Class 3B, hourly employees subject to RadioShack's rest period policy in effect since April 1, 2001; Sub-Class 4, a waiting time penalty class comprised of hourly employees meeting the requirements of Sub-Class 1, 2, 3A and/or 3B who have resigned, been terminated, laid off or otherwise separated from employment with RadioShack.[3]

---

[2]    We include Triplett in our further references to Brookler unless otherwise indicated.

[3]    According to the second amended complaint, Triplett is a member of Sub-Class 1; both Brookler and Triplett are members of Sub-Classes 2, 3 and 4.

4

RadioShack then filed notice of removal of the action from state to federal court. According to RadioShack's notice, the district court had original jurisdiction over the matter under the Class Action Fairness Act (CAFA; 28 U.S.C. § 1332(d)(2)(A)) because the second amended complaint was filed after CAFA's February 18, 2005 effective date. RadioShack represented that "a final California judgment has already been entered against Brookler's attempts to certify the[] classes [defined in the second amended complaint,]" and further stated "here, California state law recognizes there has been a final judgment triggering res judicata."

Brookler successfully moved to remand the matter back to the trial court.

RadioShack then filed a demurrer to the second amended complaint, arguing Brookler's claims were barred by the final order denying class certification under *Stephen v. Enterprise Rent-a-Car* (1991) 235 Cal.App.3d 806 (*Stephen*) and *Safaie v. Jacuzzi Whirlpool Bath, Inc.* (2011) 192 Cal.App.4th 1160 (*Safaie*) and the doctrine of res judicata.

In opposition, Brookler argued the issue of subclasses was raised in connection with the prior appeal, citing RadioShack's own supplemental brief: "Brookler's main argument is that even if the Court affirms the order decertifying the class, it should remand with directions to the superior court to allow Brookler to amend the class definition, conduct more discovery, and seek certification of the class as modified." Brookler argued we had already expressly rejected RadioShack's argument he should be precluded from seeking certification of subclasses in our decision in *Brookler II* so the demurrer should be overruled.

After hearing argument on January 16, 2014, the trial court sustained RadioShack's demurrer to the second amended complaint without leave to amend, stating as follows: "Plaintiff unsuccessfully appealed the 2008 decertification of the meal period class and did not appeal the order denying certification of the rest of the period [sic, rest period] class. As there can be no rest or meal class, there can be no subclasses. To this

5

extent the demurrer is sustained without leave to amend. Plaintiff's individual wage claims remain to be decided."[4]

*Brookler's Petition for Writ of Mandate* (*B254102*).

On February 4, 2014, Brookler filed a petition for writ of mandate (B245102), seeking to vacate the trial court's order.

On February 11, 2014, we issued the following order: "By petition for writ of mandate, petitioners Morry Brookler and Johnny Triplett challenge the respondent's order of January 16, 2014 sustaining real party's demurrer to petitioners' second amended complaint, without leave to amend.

"The record provided in support of the petition establishes petitioner's new complaint properly defines classes not previously considered by the respondent. Under these circumstances, the respondent was required to overrule real party's demurrer to the complaint.

"In view of the clear legal error apparent in the respondent's order, and this court's determination the matter should be expedited, the parties are notified of our intention to issue a peremptory writ of mandate in the first instance compelling the respondent to vacate its order sustaining the demurrer, and to issue a new and different order overruling the demurrer. (See *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177-183 [(*Palma*)]; *Alexander v. Superior Court* (1993) 5 Cal.4th 1218, 1222-1223.)[5]

---

[4] There is no reporter's transcript of the January 16, 2014 hearing.

[5] As our Supreme Court explained in *Ng v. Superior Court* (1992) 4 Cal.4th 29, 35 (*Ng*), "[T]he accelerated *Palma* procedure is the exception; it . . . should be adopted only *when petitioner's entitlement to relief is so obvious that no purpose could reasonably be served by plenary consideration of the issue*--for example, when such entitlement is conceded or *when there has been clear error under well-settled principles of law and undisputed facts*--or when there is an unusual urgency requiring acceleration of the normal process." (*Ng, supra,* 4 Cal.4th at p. 35, italics added; and see *Brown, Winfield & Canzoneri v. Superior Court* (2010) 47 Cal.4th 1233 (*Brown, Winfield*) ["The California

6

"The respondent may avoid issuance of a peremptory writ by vacating its order sustaining the demurrer, and issuing a new order overruling the demurrer. **In taking this action, the respondent shall comply with the requirements outlined in *Brown, Winfield & Canzoneri v. Superior Court* (2010) 47 Cal.4th 1233, 1248-1250.**

"If the respondent proceeds as we have suggested, it shall, prior to February 24, 2014, transmit a copy of its new order to this court. In the event respondent does not vacate its January 16, 2014 order, the real party in interest shall serve and file opposition to the petition, on or before February 28, 2014, with a view to expeditious disposition of this matter. (See *Ng v. Superior Court* (1992) 4 Cal.4th 29, 35.)"

In *Brown, Winfield, supra,* 47 Cal.4th 1233, our Supreme Court determined that "before vacating, modifying, or otherwise reconsidering an interim ruling in response to a suggestive *Palma* notice, the trial court must inform the parties that it is considering taking such action and provide them with an opportunity to be heard." (*Id.* at p. 1250.)

Notwithstanding the order to comply with *Brown, Winfield, supra,* 47 Cal.4th 1233, 1248-1250, on February 21, 2014, the trial court issued an order vacating its January 16, 2014 order sustaining RadioShack's demurrer and overruling the demurrer instead—without providing RadioShack with notice or the opportunity to be heard.

Consequently, on February 26, 2014, noting the order was entered "without compliance with the procedural requirements set forth in *Brown, Winfield*[, *supra,*] 47 Cal.4th 1233, 1248-1250," we issued an order directing the trial court to vacate its February 21 order and thereafter "proceed to determine whether to comply with this court's suggestion in our order of February 11, 2014 following compliance with the requirements set forth in *Brown, Winfield*[.]"

Rules of Court specifically authorize an appellate court to notify the parties that it is considering issuance of a peremptory writ in the first instance without requesting preliminary opposition or waiting for a reply. (Rule 8.487(a)(4).)]".)

7

On March 11, 2014, the trial court entered an order vacating its prior orders sustaining and then overruling RadioShack's demurrer to the second amended complaint and scheduled a hearing "for reconsideration of said order sustaining the demurrer . . . without leave to amend for April 22, 2014," specifying a further briefing schedule.

On March 12, 2014, noting the trial court had vacated its prior orders and scheduled a hearing on RadioShack's demurrer to the second amended complaint, we dismissed Brookler's petition for writ of mandate as moot.[6]

In further briefing, RadioShack reiterated its argument that the "death knell" doctrine foreclosed Brookler's attempt to define new subclasses and further argued Brookler had "admitted" in federal court that the causes of action alleged in the second amended complaint were the same causes of action alleged in his prior complaint. While Brookler relied on the text of our decision in *Brookler II*, RadioShack argued we had failed to understand the rule of finality applicable to class definitions.

Plaintiff's counsel reminded the trial court the order we issued upon receiving Brookler's writ petition stated: "['T]he new complaint *properly* defines classes not previously considered by the respondent['] court." (Italics added.) The problem was that the trial court had responded by overruling the demurrer without complying with the procedural requirements of *Brown, Winfield*.

RadioShack argued: "[W]hatever the [C]ourt of [A]ppeal actually meant, that [the trial court must rule on certification of the new subclasses] cannot actually be the right interpretation because if that is correct, then there is no finality to class actions. It doesn't exist because they can continue to tinker with the language of certifications and class

---

[6]    In the meantime, the parties agreed to extend the five-year deadline to proceed to trial to June 15, 2015, with a stay of trial court proceedings until 90 days after the *Brown, Winfield* hearing. As stated in our order of July 10, 2014, the five-year deadline for trying the case has now been extended to April 2016 in conjunction with a stay of all trial court proceedings until this appeal has concluded.

definitions forever." According to RadioShack, the trial court should "let this case proceed by appeal" so that this court "could actually get input from RadioShack. We could have a fulsome argument about it, and then the court could issue a written opinion, a full opinion explaining what its reasoning is." RadioShack argued the trial court had "gotten it right" when it sustained RadioShack's demurrer without leave to amend.

Relying on *Brookler II* and our initial order in response to Brookler's writ petition, Brookler's counsel argued RadioShack had already lost the argument it was attempting to reassert.

The trial court then sustained RadioShack's demurrer without leave to amend once again, concluding "the message there is simply to rule. . . . There is no reading of the bones . . . . [RadioShack's counsel] is virtually saying we are going back to the Court of Appeal anyway, I guess."

Brookler appeals.

## DISCUSSION

*Our decision in* Brookler II *expressly recognized Brookler's entitlement to bring a new class certification motion on remand.*

Resolution of this appeal is compelled by basic principles. "The denial of certification to an entire class is an appealable order." (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435.) This is so because such an order "virtually demolishe[s] the action as a class action. If the propriety of such disposition could not now be reviewed, it can never be reviewed." (*Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 699.)

Here, Brookler timely appealed from the trial court's order granting RadioShack's motion for decertification, and this order was the order at issue in *Brookler I* and then *Brookler II.* In connection with his appeal from the order granting decertification, Brookler raised the issue of subclasses.[7] In the parties' supplemental briefing in *Brookler*

---

[7] Indeed, as we noted in our prior opinion: "In opposition to RadioShack's motion to decertify the class, Brookler says, he urged the trial court that he should be permitted

9

*II,* Brookler argued certification of subclasses was appropriate while RadioShack argued Brookler should be precluded from seeking certification of subclasses. In our decision in *Brookler II*, we specifically rejected RadioShack's argument, stating: "None of the proceedings on appeal, either the initial appeal or this proceeding after remand from the Supreme Court, addresses the issue of subclasses *or bars the trial court from considering that issue on remand.*" (Italics added.)

Thus, upon the resumption of proceedings in the trial court, Brookler was entitled to bring a new motion for class certification with respect to the newly identified subclasses defined in his second amended complaint, consistent with *Brookler II* and *Brinker, supra,* 53 Cal.4th 1004. "There is no question that our statements [in *Brookler II*] were intended to guide the trial court on remand," (*Lucky United Properties Investment, Inc. v. Lee* (2013) 213 Cal.App.4th 635, 654), when the issue of whether Brookler could proceed with a motion for certification of his proposed subclasses was almost certain to arise. (*Id.* ["'application of the law of the case doctrine is appropriate where an issue presented and decided in a prior appeal, even if not essential to the appellate disposition, "was proper as a guide to the court below on [remand]," [Citation.]'"]; see also 9 Witkin, California Procedure (5th ed. 2008) Appeal, § 475.) The trial court's order sustaining RadioShack's demurrer to the second amended complaint without leave to amend constitutes a refusal to consider further certification proceedings and is therefore reversible error. (See *Hampton v. Superior Court* (1952) 38 Cal.2d 652, 655 ["The trial court is empowered to act only in accordance with the direction of the reviewing court; action which does not conform to those directions is void"].)

---

to bring a certification motion for two subclasses, but the trial court said potential subclasses were not before the court at that time (and Brookler was not permitted to conduct further discovery as a stay was in place)."

*RadioShack's Reliance on the "Stephen/Safaie Finality Bar" Is Misplaced.*

In *Stephen v. Enterprise Rent-a-Car* (1991) 235 Cal.App.3d 806 (*Stephen*), the court held a party had no right to bring a renewed motion to certify a class after the trial court had denied the earlier motion and the time for appeal had passed. (*Id*. at p. 811.) The trial court had entered an order denying the plaintiff's initial motion for class certification. (*Id*. at pp. 809-810.) The plaintiff did not appeal, and the order became final. (*Id*. at p. 810.) Later, the plaintiff filed another motion for class certification based on asserted new facts relevant to the class issues. (*Ibid*.) The defendant opposed the motion as untimely and not based on new facts. (*Ibid*.) The trial court denied the motion as untimely, and the plaintiff appealed. (*Ibid*.)

In affirming the trial court's order, the *Stephen* court reasoned the plaintiff's attempt to renew his class certification motion was "directly at odds" with California's rule providing that a denial of class certification is appealable as a final order. (*Stephen, supra,* 235 Cal.App.3d at pp. 809, 814.) As the court explained, an order denying class certification is appealable because the order has the "death knell" effect of making further proceedings in the action impractical; a plaintiff who fails to appeal from such an order "loses forever" the right to attack it; and therefore a motion to recertify a class is tantamount to an improper and untimely challenge to a final order. (*Id*. at p. 811.) *Stephen* observed "[i]f the law allowed both those appeals *and* successive motions to certify, we could have endless appeals violating the state's policy against piecemeal appellate litigation." (*Id*. at p. 814.)

Similarly, in *Safaie v. Jacuzzi Whirlpool Bath, Inc*. (2011) 192 Cal.App.4th 1160 (*Safaie*), the plaintiff appealed an order denying his motion to recertify a class of individuals who purchased whirlpool bathtubs from defendant Jacuzzi. The reviewing court upheld the order, stating "[t]he trial court's prior June 2007 ruling decertifying the class, affirmed on appeal in November 2008, barred Safaie from a second opportunity to seek class certification." (*Id*. at p. 1164.)

11

The determinations in *Stephen* and *Safaie* precluding successive motions for class certification have no application to this case. Brookler did appeal from the trial court's order granting decertification, and in connection with his appeal, RadioShack argued Brookler should not be permitted to proceed with new subclasses in the trial court as he proposed—an argument we expressly rejected. As our Supreme Court explained in *Brinker, supra,* 53 Cal.4th 1004, the ruling in *Brinker* on the plaintiff's meal timing theory "changed the legal landscape." (*Id.* at p. 1050.) Because the ruling rendered the class definition adopted by the trial court in *Brinker* overinclusive, the "prudent course" was to remand the question of subclasses to the trial court for reconsideration "in light of the clarification of the law we have provided." (*Id.* at pp. 1050-1051.) Similarly, in this case, it remains for the trial court to consider the subclasses Brookler has identified in his second amended complaint in the first instance. (See also *Aleman v. Airtouch Cellular* (2012) 209 Cal.App.4th 556, 585 [with regard to order denying class certification without prejudice, "The court made clear that plaintiffs would be able to bring a new motion"].)

To be clear, Brookler remains entitled to bring a new motion for class certification in accordance with *Brookler II* and *Brinker, supra,* 53 Cal.4th 1004, in the trial court. As we observed in *Martinez v. Joe's Crab Shack Holdings* (2014) 231 Cal.App.4th 362, 384, italics added, under *Brinker, supra,* 53 Cal.4th 1004 and subsequent decisions, "classwide relief remains the preferred method of resolving wage and hour claims, even those in which the facts appear to present difficult issues of proof. By refocusing its analysis on the policies and practices of the employer and the effect those policies and practices have on the putative class, *as well as narrowing the class if appropriate*, the trial court may in fact find class analysis a more efficient and effective means of resolving [the plaintiff's claims]."

*We Deny Brookler's Request for Reassignment.*

Citing Code of Civil Procedure section 170.1, subdivision (c), Brookler requests reassignment of this matter to a new trial judge. This statute provides: "At the request of

12

a party or on its own motion an appellate court shall consider whether in the interests of justice it should direct that further proceedings be heard before a trial judge other than the judge whose judgment or order was reviewed by the appellate court."

"The power of the appellate court to disqualify a judge under Code of Civil Procedure section 170.1, subdivision (c), should be exercised sparingly, and only if the interests of justice require it." (*Hernandez v. Superior Court* (2003) 112 Cal.App.4th 285, 303.) "The interests of justice require it, for example, where a reasonable person might doubt whether the trial judge was impartial [citation], or where the court's rulings suggest the 'whimsical disregard' of a statutory scheme. [Citation.]" (*Ibid.*) Although the trial court erred in its orders, we cannot conclude the trial court's conduct meets this standard for disqualification.

## *DISPOSITION*

The order sustaining RadioShack's demurrer to Brookler's second amended complaint without leave to amend is reversed, and the matter is remanded with directions to enter a new order overruling RadioShack's demurrer, to allow Brookler to file a motion for certification as to the subclasses asserted in the second amended complaint and to consider that motion on the merits when filed. Brookler is to recover his costs on appeal.


**WOODS, J.**


**We concur:**



**PERLUSS, P. J.**                                        **ZELON, J.**



13